# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| HIGHLINE INNOVATION INVESTMENTS PARTNERSHIP, LLC, | § § § | |
| *Plaintiff*, | § § | Civil Action No.  4:21-CV-00615 |
| v. | § § | Judge Mazzant |
| BIOLERT, LTD., GUY WILNAI, RUBEN KUZNIECKY, URI KRAMER, and HEZY SHALEV, | § § § § | |
| *Defendants*. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendants Ruben Kuzkiecky's, Guy Wilnai's, and Hezy Shalev's Consolidated Motion to Dismiss Under Federal Rules of Procedure 12(b)(6) and 9(b) and, in the alternative, Motion to Strike Plaintiff's First Amended Complaint Under Federal Rules of Civil Procedure 12(f) and 15 (Dkt. #27). Having reviewed the motion, the responses, and the applicable law, the Court finds that the motion should be **DENIED**.

## BACKGROUND

This contractual dispute arises out of the international acquisition of intellectual property rights pertaining to seizure alert technology. Defendant Biolert, Ltd ("Biolert") is an Israeli entity that developed the "Biolert System," "the industry's first actionable seizure alert system that uses off-the-shelf wearable technology—making the system accessible to anyone living with epilepsy" (Dkt. #20 ¶ 10). Defendants Guy Wilnai, Ruben Kuzniecky, Uri Kramer, and Hezy Shalev are alleged to collectively be the majority shareholders of Biolert (Dkt. #20 ¶ 13). In early 2018, Biolert began holding discussions with prospective Australian investors about merging Biolert into a publicly-listed entity on the Australian Securities Exchange (Dkt. #20 at ¶ 15). One of those

investors was Plaintiff Highline Innovation Investments Partnership, LLC ("Highline").

To encourage investor participation, Biolert prepared a PowerPoint presentation (the "June 2018 Presentation") representing "that Biolert's proprietary software algorithm utilized 'Machine learning/Artificial Intelligence (AI)' for personalized analytics, false alarm[, and] seizure detection" (Dkt. #20 ¶ 20). The use of AI technology—or "machine learning"—was incredibly attractive to investors because it allowed the software's algorithm to be "adaptive so its behavior can change (by deriving new and important insights) over time based on new data obtained from users of the software" (Dkt. #20 ¶ 21). More specifically:

> [B]y gathering user movement data which would then be analyzed by machine learning, Biolert was confirming to investors that its software was able to better recognize and adapt to user movements that were not epileptic seizures (thereby decreasing false alarms) and movements that were epileptic seizures (thereby increasing seizure detection accuracy)

(Dkt. #20 ¶ 22). Without this AI technology, the Biolert System's extremely low rate of false alarms—which was represented as less than .01 percent per day—would not have been possible (Dkt. #20 ¶ 26). The Presentation also represented that Biolert had conducted a study with the Epilepsy Foundation of Texas (the "EFTX").[1] The study showed that the Biolert system had a ninety-five percent success rate in accurately detecting seizures, which—according to the June 2018 Presentation—earned Biolert a national endorsement from the EFTX.

On December 1, 2018, the American Epilepsy Society ("AES") hosted its annual conference in New Orleans, LA. The AES conference, which is touted as the largest of its kind, "showcases the latest research, products, services and technology related to epilepsy and other neurology-related disorders to investors and members of the epilepsy community" (Dkt. #20

---

[1] EFTX "is one of the largest of the fifty state affiliates of the Epilepsy Foundation, which is the nationwide epilepsy umbrella organization that provides community services, public education, advocacy, seizure first aid training, and research funding for more than 3.4 million individuals in the United States that suffer from epilepsy" (Dkt. #20 ¶ 23).

at ¶ 28). Here, Biolert again prepared a presentation (the "AES Presentation") for potential investors (Dkt. #20 at ¶ 28). In the AES presentation, Biolert showcased its use of "Machine learning / Artificial Intelligence ('AI') for personalized analytics, false alarm & seizure detection" (Dkt. #20 at ¶ 29). Biolert also again represented that the Biolert System had a seizure detection accuracy rate of ninety-five percent (Dkt. #20 at ¶ 28).

In January 2019, Biolert and Highline began negotiations for Highline to license or acquire the Biolert System (Dkt. #20 at ¶¶ 32–33). During negotiations, Highline was provided with, among other things, the June 2018 Presentation and the AES Presentation (Dkt. #20 at ¶ 33). Subsequently, on February 11, 2019, Highline entered a contract with Biolert (the "Term Sheet") (Dkt. #20 at ¶ 35). Under the Term Sheet, the parties' agreed that Highline would acquire Biolert's patent rights and technology rights, defined as nonpublic information, trade secret, know-how, and confidential information, in exchange for certain consideration (Dkt. #27 at p. 5).

However, Highline alleges that it eventually learned Biolert's claims in the June 2018 Presentation and AES Presentation concerning the accuracy and ingenuity of the Biolert System were misrepresentations (Dkt. #20 at ¶ 38). For instance, Highline alleges it discovered the Biolert System "never utilized artificial intelligence, machine learning, or any adaptive algorithms" (Dkt. #20 at ¶ 39). Consequently, Highline alerted Biolert of its intention not to proceed with the acquisition of Biolert's intellectual property assets and formally demanded the return of consideration paid by Highline under the Term Sheet (Dkt. #20 at ¶ 43).

On November 16, 2021, Highline sued Defendants for the following causes of action: common law fraud; fraud by non-disclosure; fraud in the inducement; lifting the corporate veil; negligent misrepresentation; various violations of the Texas Deceptive Trade Practices Act ("DTPA"); and breach of the implied warranty of merchantability (Dkt. #20). On November 30,

2021, Defendants filed the present motion (Dkt. #27). On December 14, 2021, Highline filed its response (Dkt. # 31). On December 21, 2021, Defendants filed a reply (Dkt. #32).

## LEGAL STANDARDS

### I.     Federal Rule of Civil Procedure 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  The Court must then determine whether the complaint states a claim for relief that is plausible on its face.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## II.     Federal Rule of Civil Procedure 9(b)

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).

Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged.  *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005).  A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002).  The goals of Rule 9(b) are to "provide[] defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to

their reputation and goodwill, reduce[] the number of strike suits, and prevent[] plaintiffs from filing baseless claims." *U.S. ex rel. Grubbs v. Kannegantr*, 565 F.3d 180, 190 (5th Cir. 2009) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994).  Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).  However, this requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186.

Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6).  *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

## III.   Federal Rule of Civil Procedure 12(f)

Rule 12(f) of the Federal Rules of Civil Procedure provides "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). The Court has the authority to act on its own or pursuant to a "motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading. FED. R. CIV. P. 12(f) (1–2). The Fifth Circuit has stated that motions to strike are generally disfavored. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1058 (5th Cir. 1982). They are viewed with disfavor and infrequently granted, both because striking portions of pleadings is a drastic remedy and because it is often sought by a movant simply as a dilatory tactic. *See Bailey Lumber & Supply Co. v. Georgia-Pacific Corp.*, 2010 WL 1141133, at *4–5 (S.D. Miss. Mar. 19, 2010) (citing *FDIC v. Niblo*, 821 F. Supp. 441 (N.D. Tex. 1993)). Although motions to strike are disfavored and infrequently granted, striking certain allegations can be appropriate when they have no possible relation to the

controversy and may cause prejudice to one of the parties. *Jefferson Parish Consol. Garbage Dist. No. 1 v. Waste Mgmt. of La.*, 2010 WL 1731204, at *5 (E.D. La. Apr. 28, 2010) (citing *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985); *Berry v. Lee*, 428 F. Supp. 2d 546, 563 (N.D. Tex. 2006); *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 401 (E.D. Pa. 2002)). The Court possesses considerable discretion in ruling on a motion to strike. *Bailey*, 2010 WL 1141133, at *4–5 (citing *Niblo*, 821 F. Supp. at 449).

## IV.     Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15(a) governs a party's request to amend its pleading before a scheduling order's deadline to amend passes. FED. R. CIV. P. 15(a). Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. *Id.* After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the court to freely give leave when justice so requires." *Id.* The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)). But leave to amend "is not automatic." *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992). A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment.

*Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## ANALYSIS

### I.    Dismissal Under Rule 12(b)(6)

Defendants request dismissal of this matter under Federal Rule of Civil Procedure 12(b)(6) for a multitude of reasons. Defendants first argue that Highline lacked capacity to initiate this litigation because Highline's corporate privileges were forfeited at the time this suit was filed. Defendants next assert four statutory reasons why Highline's DTPA claim should be dismissed: (1) the claim is barred under Texas Business and Commerce Code § 17.49(f) "because Highline's lawsuit arises out of a non-residential transaction exceeding $100,00.00 in total consideration where Highline was represented by legal counsel" (Dkt. #27 at p. 3); (2) the claim is barred under Texas Business and Commerce Code § 17.49(g) because "Highline's lawsuit arises out of a non-residential transaction or set of transactions related to the same project exceeding $500,000.00 in total consideration" (Dkt. #27 at p. 3); (3) the claim is barred under Texas Business and Commerce Code § 17.45(4) because intellectual property is neither a "good" nor a "service" under the DTPA (Dkt. #27 at p. 15); and (4) limited liability companies are not included within the definition of "consumers" that may bring suit under the DTPA. Finally, Defendants argue that Highline's DTPA claim and negligent misrepresentation claim are both barred by limitations because Highline failed to sue within two years of discovering Defendants' allegedly fraudulent acts.

### A.  Highline's Capacity to Sue

As noted, Defendants' first argument for dismissal under Rule 12(b)(6) asserts that when this lawsuit was initiated on November 16, 2021, Highline lacked the capacity to sue. Defendants claim that Highline forfeited its corporate privileges on or around April 20, 2021, for failure to pay

the Texas state franchise tax (Dkt. #27 at p. 10). Defendants also offer evidence showing that on August 20, 2021, the Texas Secretary of State (the "SOS") forfeited Highline's corporate charter (Dkt. #27, Exhibit 1).

"The capacity of a corporation to bring suit is determined by the law of the state where it is organized." *Texas Clinical Labs, Inc. v. Leavitt*, 535 F.3d 397, 403 (5th Cir. 2008); *see also* FED. R. CIV. P. 17(b)(3) (providing that for all parties that are not individuals or corporations, the "capacity to sue or be sued is determined . . . by the law of the state where the court is located."). Accordingly, the Court will look to Texas law to determine whether Highline had capacity to sue. *Id.* The Texas Tax Code states that a "taxable entity"—which includes limited liability companies—forfeits its right to sue if the entity fails to pay its state franchise taxes. *See* TEX. TAX CODE §§ 171.252(2), 171.0002 (including "limited liability company" under the definition of "taxable entity"). "If the corporate privileges of a corporation are forfeited . . . the corporation shall be denied the right to sue or defend in a court of this state." *Id.* at § 171.252(1).

Texas law also provides for the revival of corporate privileges. How revival occurs depends on when the entity remedied the condition that caused it to forfeit its corporate privileges. If the entity "pays any tax, penalty, or interest due" *before* the forfeiture of its charter, the Texas Comptroller "shall revive" its corporate privileges. TEX. TAX CODE at § 171.258; *see also, generally, YHR Mason Road Partners, LP v. 7-7 Cleaners, Inc.*, No. 01-18-00849-CV, 2020 WL 716732, at *5–6 (Tex. App.—Houston [1st Dist.] Feb. 13, 2020) (discussing the differences between forfeiture of corporate privileges and forfeiture of a charter). But if the entity fails to "revive its forfeited privileges within 120 days *after* the date that the privileges were forfeited," the SOS may forfeit the entity's corporate charter. TEX. TAX CODE § 171.309 (emphasis added). "The SOS effects a forfeiture by inscribing on the corporation's record the words 'Charter

9

Forfeited,' the date on which this inscription is made, and a citation to" the Texas Tax Code. *YHR Mason*, 2020 WL 716732, at \*5–6 (citing Tex. Tax Code § 171.311).

Once an entity's corporate charter has been forfeited by the SOS, the entity may be "entitled to have its charter revived, and to have its corporate privileges revived, if:

> (1) the corporation files each report that is required by this chapter and that is delinquent;
> (2) the corporation pays the tax, penalty, and interest that is imposed by this chapter and that is due at the time the request under Section 171.313 of this code to set aside forfeiture is made; and
> (3) the forfeiture of the corporation's charter or certificate is set aside in a proceeding under Section 171.313 of this code.

*Id.* (citing Tex. Tax Code § 171.312). If these conditions are satisfied, the SOS "shall set aside" the forfeiture of the corporation's charter. *Id.* If the SOS sets aside the forfeiture of the charter, the Comptroller "shall revive" the corporate privileges of the corporation. Tex. Tax Code § 171.314. "Once the corporation pays the delinquent taxes and is reinstated, the payment relates back and revives the corporate rights that were forfeited." *Flameout Design and Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 839 (Tex. App.—Houston [1st Dist.] 1999, no pet.). This same revival process applies to limited liability companies. *Marshall Feature Recognition, LLC v. Pepsi-Cola Co.*, No. 6:12-CV-00956, 2015 WL 5912672, at \*1 (E.D. Tex. Sept. 28, 2015).

The Court finds that when this suit was filed on November 16, 2021, Highline had capacity to sue. Highline's charter was forfeited by the SOS. However, neither party disputes that Highline's charter—and thus its authority to transact business in Texas—was reinstated by the SOS on December 1, 2021 (*see* Dkt. #31, Exhibit 1). And under Texas law, once an entity recovers its charter by paying its delinquent taxes, the entity's "right to sue or defend is revived," and the entity "may sue or defend all causes of action, regardless of whether such causes of action arose before or during the time period of forfeiture." *G. Richard Goins Constr. Co., Inc. v. S.B.*

*McLaughlin Assoc., Inc.*, 930 S.W.2d 124, 128 (Tex. App.—Tyler 1996). Indeed, "the reinstatement of its charter will relate back and revive whatever rights the corporation had at the time the suit was filed." *Marshall Feature Recognition*, 2015 WL 5912672, at * 2 (citing *M & M Constr. Co., Inc. v. Great Am. Ins. Co.*, 747 S.W.3d 552, 555 (Tex. App. 1998)); *see also NexBank SSB v. Bank Midwest, N.A.*, No. 3:12-CV-1882, 2012 WL 4321750, at *2 (N.D. Tex. Sept. 21, 2012) ("But even taking judicial notice of the fact that Bank Midwest was not in good standing as of the date it filed its counterclaims, this does not demonstrate that Bank Midwest *currently* is not in good standing[ ] [b]ecause a corporation's rights can be reinstated, and because the reinstatement of rights is retroactive[.]") (emphasis in original). Thus, when Highline recovered its charter, its right to sue related back to April 20, 2021—the date Highline forfeited its corporate privileges. Accordingly, the Court finds that Highline does not lack capacity to litigate this matter.

### B.  Other Arguments Under Rule 12(b)(6)

As to Defendants' other arguments for dismissal under Rule 12(b)(6), the Court finds these claims are better suited for summary judgment. Accordingly, dismissal pursuant to Rule 12(b)(6) is not warranted at this time.

## II.    Dismissal Under Rule 12(b)(9)

Defendants next request dismissal of this matter under Federal Rule of Civil Procedure 12(b)(9). Specifically, Defendants allege that Highline did not meet the heightened pleading standard under Rule 12(b)(9) for its claims of common law fraud, fraud by non-disclosure, fraud in the inducement, negligent misrepresentation, and DTPA claims (Dkt. #27 at p. 21).

After reviewing these claims as pleaded in the current complaint, the Court finds that Highline has stated plausible claims for relief. Accordingly, the Court finds dismissal is not warranted under Rule 12(b)(9).

### III.    Motion to Strike Under Rules 12(f) and (15)

As an alternative to dismissal, Defendants request the Court strike the Amended Complaint under Federal Rules of Civil Procedure 12(f) and 15 based on Highline's alleged lack of capacity to sue under § 171.252 of the Texas Tax Code (Dkt. #27 at pp. 29–30). The Court has resolved this issue under its Rule 12(b)(6) analysis above. Accordingly, the Court finds no reasons to grant Defendants' motion on this ground under Rules 12(f) and 15.

### CONCLUSION

It is therefore **ORDERED** that Defendants Ruben Kuzkiecky's, Guy Wilnai's, and Hezy Shalev's Consolidated Motion to Dismiss Under Federal Rules of Procedure 12(b)(6) and 9(b) and, in the alternative, Motion to Strike Plaintiff's First Amended Complaint Under Federal Rules of Civil Procedure 12(f) and 15 (Dkt. #27) is **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 12th day of August, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE